JOHN M. BAILEY, JUSTICE
Maximilian Jaroslav Dohnal appeals the trial court's order denying his motion for postconviction DNA testing. See TEX. CODE CRIM. PROC. ANN. arts. 64.01 -.05 (West 2006 & Supp. 2017). In two issues on appeal,[1] Appellant contends that the trial court erred in finding (1) that exculpatory DNA test results would not have made any difference in the case and (2) that Article 64 of the Texas Code of Criminal Procedure requires Appellant to show that the failure to conduct DNA testing at trial occurred through no fault of Appellant. We affirm.
Background Facts
In 2009, Appellant was convicted of aggravated assault with a deadly weapon. The jury assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. This court subsequently affirmed Appellant's conviction in an opinion and judgment issued in 2011. Dohnal v. State , No. 11-09-00236-CR, 2011 WL 319950 (Tex. App.-Eastland Jan. 27, 2011, pet. ref'd) (mem. op., not designated for publication). We recited the facts of the case as follows in our previous opinion:
*653 At trial, the State offered evidence that [Appellant] and Michael Stump were selling drugs together and that they got into a heated argument. Later that day, [Appellant] and Stump saw each other outside a convenience store. [Appellant] asked Stump to follow him to the side of the store. There, [Appellant] pulled out a pistol and shot Stump in the face.
The issues presented in this appeal require us to examine the facts in greater detail. In 2005, Stump and Appellant worked together selling drugs. On November 15, 2005, Stump and Appellant got into a heated argument. That same day, Lee Ann Sotelo and Misty Doud were staying in a motel room together. Appellant visited Sotelo and Doud in their motel room, and he had a gun with him.
Later that night, Stump and two of his friends, John Freese and Tony Glaeske, were traveling together in Glaeske's car. Stump and Freese testified that, at around 2:00 a.m., Stump received a phone call from Nicki Peel. Peel was "hysterical and upset" and warned Stump that Appellant had a gun and was looking for him. Peel is deceased and did not testify at trial. However, Peel's friend, Andrea Mendoza, testified that Peel also told her that Appellant had been looking for Stump.
About ten minutes after the phone call, Stump, Freese, and Glaeske decided to stop at a convenience store. While inside the store, Stump saw Appellant walking outside. Stump exited the store and encountered Appellant. Stump testified that Appellant told him to come with him, at which point Stump followed Appellant around to the side of the convenience store. A scuffle ensued after Appellant pulled out a gun. Appellant shot at Stump twice. The first shot missed, but the second shot hit Stump in the face.
Stump identified Appellant as the shooter. Freese also identified Appellant as the shooter. Two patrons of the convenience store, Walter Hayes III and Minh Pham, described the shooter as a man wearing a dark, hooded sweatshirt. Pham also testified that the shooter appeared to be wearing "[s]ome latex, kind of like light-colored gloves or something" on his hands.
All of the witnesses who were present at the shooting testified that the shooter drove away in a silver Ford Taurus. Appellant rented a silver Ford Taurus on November 12 and returned it on November 16, about ten hours after the shooting took place.
The morning after the shooting, Appellant again visited Sotelo's motel room. On this occasion, Appellant attempted to give Doud some articles of clothing. When asked to describe the items, Sotelo testified that she only remembered a dark-colored sweater. Doud refused to accept the clothing and asked Appellant to leave. Sotelo called the police and told them about the incident in her motel room. She also told the police that she believed that Appellant shot Stump.
The police set up surveillance of Sotelo and Doud's motel room. Eventually, Sotelo and Doud checked out and left the motel. After Sotelo and Doud left, Investigator Vance Hill searched in and around the motel room. He found a pair of latex gloves and a white T-shirt wrapped in a motel towel in a trash can outside the motel room.
The defense's theory at trial was that the State's witnesses were lying about the identity of the shooter in order to protect another member of their drug business. The defense highlighted several credibility issues with each of these witnesses. For example, Stump's version of events changed several times throughout the course of the investigation, and on several *654 occasions, he stated that Appellant had nothing to do with the shooting. Stump eventually entered into a plea deal with the State on unrelated charges, which required him to testify in this case.
Additionally, Freese testified that he was sure that Appellant was the shooter because he recognized the silver Ford Taurus. According to Freese, Appellant gave Freese a ride in that car several weeks prior to the shooting. However, that was not possible because Appellant did not rent the Ford Taurus until four days prior to the shooting.
The prosecutor asserted during closing argument that Appellant disposed of the gloves and T-shirt in the trash can because they contained evidence that Appellant shot Stump. Conversely, the defense argued that this evidence was unrelated to the shooting. The defense noted that Sotelo and Doud were using drugs in the motel room. Therefore, the defense argued, it was possible that these items were related to their drug use. Appellant's trial counsel argued:
If you're the [motel] maid and you go in there and you find something suspicious on a shirt or on a towel, are you going to cycle that in with the other towels? You're going to pick up some latex gloves, you pick it up, and you take it out and put it in the dumpster.
Additionally, defense counsel faulted the State in closing argument for not testing the latex gloves and T-shirt for evidence. Counsel argued that the State's failure to test these items was "reasonable doubt right there."
Procedural History
Appellant filed a pro se motion for postconviction DNA testing of the gloves and T-shirt. In its initial response to Appellant's motion, the State asserted that identity was not an issue at trial. The State supported this contention by attaching our opinion and judgment from the direct appeal. See Dohnal , 2011 WL 319950, at *2-3. We note that, in his direct appeal, Appellant did not challenge the sufficiency of the evidence supporting his conviction. Id. Accordingly, we did not discuss in detail the evidence offered at trial in our previous opinion. Based upon the State's contention, the trial court initially found that identity was not an issue at trial and denied Appellant's motion for postconviction DNA testing. Subsequently, the State conceded in its first appellate brief that identity was an issue at trial. In light of the State's concession, this court remanded the case to the trial court for further fact-finding and analysis.
On remand, the trial court held another hearing and again denied Appellant's motion for postconviction DNA testing.[2] In its findings of fact and conclusions of law, the trial court found that the evidence sought to be tested still exists and that it is in a condition making DNA testing possible. The trial court also determined that the request for the proposed DNA testing was not made to unreasonably delay the execution of the sentence or administration of justice. The trial court additionally found that identity was an issue in the case. However, the trial court also found that Appellant failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing.
*655 Additionally, the trial court found that Appellant failed to establish that the failure to obtain DNA testing was through no fault of his own.[3] Appellant challenges both of these negative findings in his second brief.
Analysis
Under Article 64 of the Texas Code of Criminal Procedure, a convicted person may file a motion for DNA testing in the convicting court. CRIM. PROC. art. 64.01(a-1). The motion must be accompanied by a sworn affidavit containing supporting facts. Id. The convicting court may order DNA testing only if it finds the following: (1) the evidence still exists, is in a condition making DNA testing possible, and is subject to chain of custody sufficient to establish that it has not been altered; (2) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; (3) identity was or is an issue in the case; (4) the movant established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing; and (5) the request is not made to unreasonably delay the sentence. CRIM. PROC. art. 64.03(a).
In his first issue, Appellant contends that the trial court erred in finding that he failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Thus, Appellant is challenging the trial court's determination that he did not satisfy the requirement of Article 64.03(a)(2)(A).
In reviewing the trial court's Article 64 rulings, an appellate court gives almost total deference to the trial court's findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor. See Ex parte Gutierrez , 337 S.W.3d 883, 890 (Tex. Crim. App. 2011) ; Routier v. State , 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). But the reviewing court reviews de novo all other issues applying law to fact. Gutierrez , 337 S.W.3d at 890 ; Routier , 273 S.W.3d at 246. The de novo review includes the issue of whether the convicted person has established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Rivera v. State , 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) ; see CRIM. PROC. art. 64.03(a)(2)(A).
Under Article 64.03(a)(2)(A), a convicted person is not entitled to DNA testing unless he first shows that there is greater than a 50% chance that he would not have been convicted if the proposed testing's exculpatory results were available at the time of his trial. Holberg v. State , 425 S.W.3d 282, 286-87 (Tex. Crim. App. 2014) ; see Smith v. State , 165 S.W.3d 361, 364 (Tex. Crim. App. 2005). "Exculpatory results" means results excluding the convicted person as the donor of the material. Holberg , 425 S.W.3d at 287. For purposes of this inquiry, we must assume that the results of the postconviction DNA testing that Appellant seeks would prove favorable to him. Routier , 273 S.W.3d at 257. Thus, we must assume that DNA testing would exclude Appellant as the donor of DNA material on the gloves and T-shirt. See ids="8162480" index="13" url="https://cite.case.law/sw3d/273/241/#p246">id.
A defendant meets his burden if the record shows by a preponderance of the evidence that, in light of presumed exculpatory DNA test results, he would *656 not have been convicted. See Reed v. State , No. AP-77,054, 541 S.W.3d 759, 774, 2017 WL 1337661, at *11 (Tex. Crim. App. Apr. 12, 2017). "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.' " Gutierrez , 337 S.W.3d at 892 (citing Rivera , 89 S.W.3d at 59 ).
"Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." Swearingen v. State , 303 S.W.3d 728, 736 (Tex. Crim. App. 2010). In this case, there is substantial evidence of Appellant's guilt, including the victim of the shooting identifying Appellant, who was the victim's business associate, as the shooter. Freese also knew Appellant and was able to identify him as the shooter.
Additionally, there was strong circumstantial evidence of Appellant's guilt. Four different witnesses testified that the shooter drove off in a silver Ford Taurus. Appellant had rented a silver Ford Taurus prior to the shooting and returned it shortly after the shooting took place. Furthermore, there was evidence that Appellant had a motive to shoot Stump because, between ten and twelve hours before the shooting, Appellant and Stump had been arguing. Throughout the day, two people saw Appellant with a gun, and Appellant was looking for Stump in the minutes leading up to the shooting.
Appellant contends that exculpatory DNA test results would have cast doubt on the credibility of the State's witnesses and would have overcome the circumstantial evidence pointing to his guilt. We disagree. The connection between the shooting and the latex gloves and the T-shirt is tenuous at best. They were not found at the scene of the shooting. Instead, they were found at a local motel the next day. There is no direct evidence that the shooter wore these items or that the shooter placed these items in the trash can. Furthermore, there is no evidence regarding whether any other person may have touched the items prior to their discovery. In this regard, these items were found inside a trash can located in a public place away from the crime scene. While the applicable test requires us to presume an exculpatory result from the postconviction DNA testing, it does not require us to presume an item's relevance to the question of the offender's identity. Reed , 541 S.W.3d at 775, 2017 WL 1337661, at *11.
Detective Richard Williams testified that he "believed" that the gloves were "connected to the crime" based on the information that the police had. The prosecutor also asserted this belief at closing argument. However, had the latex gloves and T-shirt been tested prior to trial and an exculpatory result obtained, these items quite likely would not have been mentioned at trial given their tenuous connection to the crime.
Appellant additionally contends that the trial court erred in failing to consider Detective Weathermon's police report and evidence that Stump is mentally incompetent. The police report was not offered into evidence at trial, and Detective Weathermon did not testify. Instead, Appellant attached Detective Weathermon's police report as an exhibit to his motion for DNA testing. Evidence of Stump's mental incompetence was not offered at trial because it was unknown to Appellant at that time. Accordingly, we do not consider these posttrial factual developments because we limit our review to the "mix of evidence that was available at the time of trial." Reed , 541 S.W.3d at 774, 2017 WL 1337661, at *11 (quoting *657 Holberg , 425 S.W.3d at 285 ). Moreover, the police report does not provide a strong connection between the gloves and the shooting.
In this case, exculpatory DNA test results from the latex gloves and T-shirt would "merely muddy the waters." See Gutierrez , 337 S.W.3d at 901. Accordingly, we conclude that Appellant failed to meet his burden to show by a preponderance of the evidence that a reasonable probability exists that exculpatory DNA testing of the T-shirt and gloves would prove his innocence. We overrule Appellant's first issue. Our disposition of the first issue is dispositive of this appeal. Accordingly, we do not reach Appellant's second issue.
This Court's Ruling
We affirm the order of the trial court.

After the filing of the original set of briefs in this appeal, this court abated the case and remanded it back to the trial court for reconsideration of an additional matter identified in the original briefing. The appeal has now been reinstated and the parties have re-briefed all issues. Accordingly, we address Appellant's issues as presented in his second brief.

Upon remand, the trial court appointed counsel for Appellant to represent him at the hearing at the trial court level. At the conclusion of the hearing, the trial court offered to appoint appellate counsel for Appellant. However, Appellant elected to pursue this appeal without counsel.

The trial court noted at the conclusion of the hearing that Appellant's trial counsel, as a matter of trial strategy, purposely did not seek to have the T-shirt and latex gloves tested for DNA.